Filed 11/24/14  P. v. Jones CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B251324 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA397754) |
| v. | |
| DARLA RAY JONES, | |
| Defendant and Appellant. | |
| In re DARLA RAY JONES | B255936 |
| on Habeas Corpus. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Carol H. Rehm, Jr., Judge.  Affirmed.

ORIGINAL PROCEEDING; petition for a writ of habeas corpus.  Petition dismissed.

Maria Leftwich, under appointment by the Court of Appeal, for Defendant, Appellant, and Petitioner.

Kamala D. Harris, Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Tita Nguyen, Deputy Attorney General, for Plaintiff and Respondent.

Defendant Darla Jones appeals from the judgment entered following a jury trial in which she was convicted of two counts of criminal threats and two counts of assault with a firearm. Defendant also petitions for a writ of habeas corpus, raising the same issues as on appeal: the prosecutor committed misconduct by failing to correct false and misleading testimony by the victims and trial counsel rendered ineffective assistance by failing to examine the prosecutor's investigator about the victims' statements during an interview. We conclude neither claim has merit, and therefore affirm the judgment and dismiss the habeas corpus petition for failure to state a prima facie claim.

## BACKGROUND

**1.      The charged offenses**

Defendant had been the girlfriend of, and caregiver for, Kirk Livingston. Before Livingston died, he asked his brother, Darryl Israel, to help defendant and look out for her. Israel honored his brother's request by supporting defendant financially October 2011 through April 2012 and lending her his car for about two months. When defendant lost her home, Israel financed her move into a rehabilitation facility and helped her get a storage facility for her possessions. Israel, who was married and had a girlfriend, also had a "one night stand" with defendant.

On Friday, April 27, 2012, defendant phoned Israel and asked him for $80.[1] Israel arranged to meet defendant in a drugstore parking lot and drove there with his coworker, Terrence Hite. Hite stayed in the truck while Israel spoke to defendant. Israel gave defendant $40 and showed her he had only $3 left. Defendant became angry. Israel, who had given defendant $80 the day before, asked her why she needed money all the time and whether she was using crack. Defendant moved toward Israel in a threatening manner and, close to his face, replied that it was her own business. Israel said he was not going to give her any more money, and defendant responded, "'I will shoot your bitch ass.'"

---

[1] Undesignated date references pertain to 2012.

2

Hite got out of the truck and approached Israel and defendant. Defendant pulled a loaded revolver from the pocket of her sweatshirt, pointed it at Hite and Israel, and threatened to "kill both of you." Hite retreated to the truck, while defendant warned Israel he had better have her money the next time she saw him. She also referred to "'blood.'" She then got into a car and drove away.

Israel testified he was in shock. Defendant had previously told Israel she was a "Black Peastone Blood gang member." Defendant's statements, use of a gun, and gang membership caused Israel to fear for his life. Nonetheless, Israel did not call the police immediately because he was in shock and Hite said he wanted to talk to his "brother," who was a police officer.

Hite testified he had heard defendant claim gang membership on a prior occasion, and this, in addition to defendant's threat and use of a gun made him fear for his life. He explained he nevertheless did not call the police right away because he had prior convictions and because he thought it was really Israel's business. The next day, Hite phoned his cousin, who was an LAPD officer, and his cousin told him to go to the 77th Division police station to report the incident.

Israel and Hite, who did not work on Saturdays, went to the Southeast Division police station to report the incident on Saturday, April 28. Officers at that station told them they would transfer the matter to the 77th Division station. On Monday, April 30, Israel and Hite went to the 77th Division station. Somehow, the date of the offense was recorded as April 28, not April 27. At the preliminary hearing, both testified the crime was on April 28. Sometime after the preliminary hearing and before trial, Israel and Hite told the prosecutor the crime was on April 27, not April 28.[2]

The prosecutor's investigator, James Fontenette, testified he was present when the prosecutor interviewed Israel and Hite "in the field" in December 2012. The prosecutor asked whether they were sure about the date of the incident.

---

[2] This error forms the basis for the issues raised on appeal and in the writ petition.

**2.      Verdict and sentencing**

The jury convicted defendant of two counts of criminal threats and two counts of assault with a firearm. It found defendant personally used a gun in the commission of each offense. (Pen. Code, § 12022.5, subd. (a).) The trial court sentenced defendant to 13 years in prison.

Defendant appealed from the judgment and filed a petition for a writ of habeas corpus, which we agreed to consider with the appeal.

**DISCUSSION**

**1.      Prosecutorial misconduct**

On appeal and in her petition for a writ of habeas corpus, defendant contends the prosecutor committed misconduct by failing "to correct the false and misleading testimony of both Israel and Hite" regarding contact between them and the prosecutor regarding the change of dates. Defendant argues "Israel testified falsely that he had contacted the prosecutor about the date being incorrect before [the prosecutor] contacted him" and "Hite's testimony was misleading in that he testified that he had been trying to convince Israel 'the whole time' that the date in the police report was wrong and the prosecutor did not 'call' him and tell him the date was incorrect."

**a.      Proceedings in the trial court**

**(1)      Israel's testimony**

Israel testified on direct examination that when he reported the incident to the police, he did not "have the accurate date." He "thought the 28th was a Friday," whereas it was actually a Saturday. Israel inconsistently testified both that he told the officer the incident was on April 28 and that the officer somehow wrote down the wrong date. The prosecutor asked, "You knew it happened on the 27[th]?" Israel replied, "Yeah."

On cross-examination, counsel asked, "Is there any reason why when you made your report you said the incident occurred on the 28[th]?" Israel responded, "I got the days wrong and I thought the Saturday the 28th was a Friday and then it came back it was a Saturday, so I was mixed up. The date—" Counsel interrupted, asking, "You got the

4

date wrong two days later?" Israel replied, "No. The next day we did the report at Southeast and the detective whoever the officer wrote down the wrong date and then they said that they were going to transfer it down to another station down to 77th Division and say, go down there, and then they were going to transfer it over there, so we went down there the next day." Counsel asked if the officers at 77th Division also wrote down the wrong date. Israel testified, "No. They transferred that same report over to the 77th Division." When officers at the 77th Division station interviewed Israel, they did not ask him the date of the offense. He further testified he gave the police the wrong date because, "I was mixed up. The date—the day I assumed it was Friday. I didn't look at a calendar."

Israel admitted he had testified at the preliminary hearing[3] that the crime was on the 28th. He first realized the 28th was not the correct date "about a week or so" "after the testimony." Defense counsel asked, "So a week after the preliminary testimony you went to the district attorney or to the police and told them you got the date wrong?" Israel responded, "Yeah, pretty much." He added, "I don't know if it was right then and there, but I told her." Asked if he told her a week after the preliminary hearing, Israel testified, "Not a week. That is when I realized it was." Asked when he told the prosecutor he had the date wrong, Israel replied, "It had to be after Mr. Hite convinced me that the date was wrong." He agreed with defense counsel's assertion he "needed Mr. Hite to convince [him] of the date that this occurred."

Defense counsel asked, "Did the district attorney indicate to you that the date was wrong that it couldn't be the 28th. This could not have been the 28th. And you still said it was the 28th and then called back later and said, no, sorry it wasn't the 28[th]?" Israel replied, "No. I told them it was a Friday and she said it was a Saturday. That date was wrong." Counsel asked, "So that is the first time you told her that, okay, you did have the wrong date after she told you it was a Saturday?" Israel responded, "No, I hadn't looked

---

[3] The preliminary hearing was June 29, 2012.

5

at the calendar by then and said well Friday was the 27th." Counsel then asked, "So you voluntarily went to the district attorney's office and told her that you had the—she had the date wrong?" Israel replied, "I called her, yeah." Defense counsel asked, "She didn't contact you first?" Israel said, "No."

Defense counsel asked why Israel had not let anyone know the date was wrong sooner. Israel replied, "I didn't know." Counsel asked, "Isn't it a fact the only time—the first time you ever said, okay, the date was wrong [was] after being told that it couldn't have been the 28th?" Israel responded, "No. No one ever told me that." Counsel asked when Israel called the prosecutor and told her he had the date wrong. Israel said it was "earlier this month." Israel testified on February 28, 2013.

On redirect examination, Israel explained that when he had reported the crimes he had said it happened "last Friday," and the officer must have erroneously written down the 28th. He reviewed the police report prior to the preliminary hearing, which reflected the date of the crimes was the 28th, so he relied on that date in his testimony at the preliminary hearing. No one asked him at the preliminary hearing what day of the week the crimes occurred.

### (2)    Hite's testimony

On direct examination, Hite testified he was aware the crime report said the crimes occurred April 28, which he now knew was a Saturday, but he knew the crimes actually occurred on a Friday because he did not work Saturdays. After he realized the date was wrong, he told Israel and they corrected the date.

On cross-examination, Hite testified when they first went to the police on Saturday, April 28, they told the officers the crimes "happened that Friday, the day before." He did not know if the officers wrote down the wrong date. When they went to the 77th Division police station on Monday, April 30, he told the officers the crime happened on Friday, without stating a date. Hite testified he realized the date was wrong "[m]aybe a couple of months ago" and called the prosecutor to tell her. He added, "I was trying to convince Mr. Israel the whole time that it wasn't that date. We were going by

what the date was on the police report." Defense counsel asked, "Are you sure she didn't call you and tell you that the date was wrong?" Hite replied, "No." Counsel did not attempt to clarify whether Hite's response meant the prosecutor did not call him and tell him the date was wrong or he was not sure if she did so.

### (3) Discussion between court and counsel about Fontenette's proposed testimony

Outside the presence of the jury, defense counsel told the court he wanted to call the prosecutor's investigator, Fontenette, to address "[t]he fact that the district attorney as well as Mr. Fontenette approached both of the alleged victims first about the date being wrong after the defense had given [them] evidence that [defendant] couldn't have committed this crime on the 28th." Defense counsel explained the prosecutor had told him that at some point she spoke to the victims about the date, and they insisted the 28th was the correct date but "they called back a few hours later and said, no, we did have the date wrong and apparently it was a few days later." Counsel explained he found it suspicious that the date was changed only after he proved to the prosecutor that defendant had an alibi for the 28th.

Defense counsel told the court he had assumed the prosecutor had spoken to the victims on the phone, but apparently it was "in the field." Counsel noted when he "questioned [the victims] yesterday about it, they both are testifying and giving the inference that they were the ones who brought up first the date being wrong and that is not the case." He conceded there was no prior inconsistent statement due to the way he questioned the victims, but explained he was not trying to elicit any prior inconsistent statements, he merely wanted "to put on the record what actually happened. If I don't get to do that, they are giving the inference which the People know is wrong that they were the ones who contacted about the date first." Counsel also argued it would be unfair to prevent him from doing so because the prosecutor had not given him a report reflecting these follow-up contacts with the victims.

7

Defense counsel represented the prosecutor had told him Fontenette was present when she spoke to the victims, and he wanted to ask Fontenette whether Fontenette or the prosecutor asked the victims "about the dates possibly being wrong" and whether "that's the first time there was any discussion about the dates being wrong. That is it."

The prosecutor explained, "[W]e were not prompting the victims to change the date. Our questions started with, are you sure this happened? That is the point of these interviews. We spoke to them after we spoke to the alibi witness that was presented by the defense for April 28." She told the court she had listened carefully to cross-examination of the victims and "every single answer that the witness provided was accurate in terms of what occurred because the questions were not well phrased." She noted that throughout cross-examination defense counsel had not permitted the victims to expand upon their yes or no answers. She argued there were no inconsistent statements and defense counsel was seeking to introduce hearsay. She further argued it would be unfair and inaccurate to make it appear the victims were not testifying truthfully, and represented she would not argue the victims "came up with this date all by themselves."

The court agreed to allow the defense to call Fontenette. Upon inquiry by the prosecutor, defense counsel represented he would not ask Fontenette what the victims said, but instead whether Fontenette and the prosecutor approached the victims about the date and whether that was "the first time the date was ever brought up." The prosecutor noted the case had been investigated by LAPD officers before her office took over the investigation, so Fontenette would not be able to testify to when a victim first said something. She also cautioned that Fontenette would not be able to testify to the victims' contacting her and telling her the date was wrong. Defense counsel replied, "I am not going to question them about that."

Thereafter, Fontenette testified as previously described.

**b.     Principles regarding prosecutorial misconduct**

"A prosecutor's conduct violates a defendant's federal constitutional rights when it comprises a pattern of conduct so egregious that it infects '"the trial with unfairness as to

make the resulting conviction a denial of due process." [Citation.]' [Citation.] . . . Conduct that does not render a trial fundamentally unfair is error under state law only when it involves ""'the use of deceptive or reprehensible methods to attempt to persuade either the court or the jury.'" [Citations.]'" (*People v. Bennett* (2009) 45 Cal.4th 577, 594–595.) A prosecutor may not knowingly present false evidence and must correct any testimony by a prosecution witness that he or she knows, or should know, is false or misleading. (*People v. Harrison* (2005) 35 Cal.4th 208, 242; *People v. Dickey* (2005) 35 Cal.4th 884, 909.)

### c. The prosecutor did not commit misconduct

At trial, defendant assumed the prosecutor had told the victims the defendant could not have committed the crimes on April 28. Defendant's claims on appeal and in her petition for a writ of habeas corpus also depend upon this assumption. However, nothing in the record supports this assumption. The prosecutor told the trial court she was "not prompting the victims to change the date." Israel denied anyone told him the crimes could not have been committed on April 28. Hite denied the prosecutor told him the date was wrong. Even the declaration of trial counsel attached to the petition for a writ of habeas corpus does not support the assumption. Trial counsel instead stated, "I was told by the DA that she and the DA investigator interviewed Hite and Israel after confirming that [defendant] could not have committed the crime on the 28th. According to the DA, both Hite and Israel maintained that the 28th was the correct date. The DA then told me that Hite and Israel called her several days later and then told her the 28th was the wrong date." The declaration does not state the prosecutor told the victims defendant had an alibi for April 28 or that April 28 could not be the correct date.

A review of defense counsel's cross-examination of Israel undermines defendant's claim Israel provided false or misleading testimony. Defense counsel asked, "Did the district attorney indicate to you that the date was wrong that it couldn't be the 28th. This could not have been the 28th. And you still said it was the 28th and then called back later and said, no, sorry it wasn't the 28[th]?" Israel replied, "No. I told them it was a Friday

and she said it was a Saturday. That date was wrong." The question was compound and incorporated the unsupported assumption that the prosecutor told the victims the crimes could not have been committed on April 28. Israel's response was neither false nor misleading.

Similarly, defense counsel asked, "Isn't it a fact the only time—the first time you ever said, okay, the date was wrong [was] after being told that it couldn't have been the 28th?" Israel responded, "No. No one ever told me that." (RT 667)~ This question also incorporated the unsupported assumption, and Israel's response was neither false nor misleading.

The only arguably misleading testimony by Israel occurred when defense counsel asked, "So you voluntarily went to the district attorney's office and told her that you had the—she had the date wrong?" Israel replied, "I called her, yeah." Defense counsel next asked, "She didn't contact you first?" Israel said she had not. The field interview of Israel by the prosecutor constituted a form of "contact," but defense counsel's questioning regarding the change of dates had repeatedly referred to phone calls between Israel and the prosecutor and Israel's immediately preceding response had referred to his phone call to the prosecutor. It appears Israel may have construed "contact" in this context to refer to telephone contact, not the prior interview. However, subsequent testimony effectively eliminated any potential for misleading the jury. Israel testified he called the prosecutor "earlier this month," that is, February of 2013, to tell her April 28 was the wrong date, and Fontenette testified the prosecutor conducted a field interview with the victims in December 2012, during which the prosecutor asked them whether they were sure about the date of the incident. Thus, the jury learned the prosecutor indeed had "contacted" Israel before he phoned her to say April 28th was the wrong date. At worst, the purported discrepancy in Israel's testimony reflected negatively upon his credibility.

Defense counsel asked Hite, "Are you sure [the prosecutor] didn't call you and tell you that the date was wrong?" Hite replied, "No." This question not only incorporated the unfounded assumption, but also specifically referred to a phone call to Hite by the

10

prosecutor. Hite's response was subject to differing interpretations, given the manner in which the question was framed, but it cannot be viewed as false or misleading.

Moreover, the jury learned from the testimony of the victims and Fontenette that the crimes were somehow reported as occurring on April 28, the victims testified at the preliminary hearing the crime occurred on April 28, the prosecutor interviewed the victims about two months before trial and asked them whether they were sure about the date of the crimes, then sometime later, perhaps just a few weeks before trial, the victims realized that April 28 was the wrong date and informed the prosecutor the crimes actually occurred on April 27. There was thus nothing for the prosecutor to "correct," and there is no possibility defendant was prejudiced by the prosecutor's failure to elicit testimony from either victim or her investigator to the effect that the victims did not tell her the crimes occurred April 27 until sometime after she interviewed them and asked if they were certain about the date of the crime. Accordingly, any arguable "misconduct" was harmless beyond a reasonable doubt.

For all of these reasons, defendant's prosecutorial misconduct claim has no merit and fails to state a prima facie case for relief (*People v. Duvall* (1995) 9 Cal.4th 464, 475 [petition for writ of habeas corpus stating no prima facie case for relief will be summarily denied]).

## 2. Ineffective assistance of counsel

Defendant contends trial counsel rendered ineffective assistance by failing to adequately examine Fontenette about the prosecutor's interviews with Israel and Hite. She argues, "If trial counsel had asked Fontenette about Israel's and Hite's response to the prosecutor's questions about the date, the jury would have heard that both witnesses maintained that the date of the incident was April 28th. It would have then been clear that Israel and Hite only changed the date after being contacted by the prosecutor."

### a. Elements of an ineffective assistance of counsel claim

A claim that counsel was ineffective requires a showing, by a preponderance of the evidence, of objectively unreasonable performance by counsel and a reasonable

11

probability that, but for counsel's errors, the defendant would have obtained a more favorable result.  (*In re Jones* (1996) 13 Cal.4th 552, 561 (*Jones*).)

### b.      Defense counsel did not provide ineffective assistance

The combined testimony of the victims and Fontenette fully informed the jury that the prosecutor interviewed the victims about two months before trial and asked them whether they were sure the crimes occurred on April 28, then sometime later, perhaps just a few weeks before trial, the victims realized that April 28 was the wrong date and informed the prosecutor the crimes actually occurred on April 27.  That the victims adhered to the April 28 date during their interviews by the prosecutor was implicit in light of this testimony.  Accordingly, it is not reasonably probable defendant would have obtained a more favorable result if defense counsel had "asked Fontenette about Israel's and Hite's response to the prosecutor's questions about the date" during the December 2012 interview.

Given the absence of any prejudice, defendant's ineffective assistance of counsel claim has no merit and fails to state a prima facie case for relief.  We need not address whether defense counsel misconstrued the court's rulings on the scope of Fontenette's testimony or whether the statements of the victims during the interview would have been admissible, as argued in the context of defendant's habeas corpus petition.

12

## DISPOSITION

The judgment is affirmed.  The petition for a writ of habeas corpus is dismissed.

NOT TO BE PUBLISHED.


MILLER, J.*

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

**\*** Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.